IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| JAMES P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-18-1486 |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

James P. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 14, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 16. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** and

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of Social Security. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

**REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On July 2, 2014, Plaintiff filed for DIB under Title II of the Social Security Act, alleging disability beginning April 1, 2014. R. 10, 62–63. Plaintiff alleged disability due to diabetes, hypertension, congestive heart failure, kidney problems, and functional illiteracy. R. 62, 71. Plaintiff's claims were initially denied on October 20, 2014, and upon reconsideration on March 10, 2015. R. 10, 69, 80. An administrative hearing was held on May 9, 2017. R. 10. On June 23, 2017, Plaintiff's claim was denied. R. 7. Plaintiff sought review by the Appeals Council, which concluded on March 21, 2018, that there was no basis for granting the Request for Review. R. 1–3. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164.

"It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7

(S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 12–22. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date of Plaintiff's disability. R. 12. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff had the following severe impairments: cervical degenerative disc disease, cardiomyopathy, congestive heart failure, and hypertension. R. 12. The ALJ stated that the listed impairments were severe because they "impose[d] more than a slight limitation on [Plaintiff's] ability to perform basic work-related activities" and that they satisfied the durational requirement, having lasted at least 12 months. R. 12.[2] At step three, the ALJ determined Plaintiff "[did] not have an impairment or a combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." R. 15–16. At step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and included limitations to the following activities: "occasional climbing of ladders, ropes, or scaffolds; frequent climbing of stairs or ramps; frequent stooping, kneeling, crouching, or crawling." R. 16–20. The ALJ then determined Plaintiff was unable to perform his past relevant work as a "kitchen helper." R. 20. However,

---

[2] The ALJ also noted that Plaintiff was diagnosed with a variety of other impairments but that these impairments were "non-severe" as they "cause no more than minimal vocationally relevant limitations, have not met the durational requirement, and/or are not fully supported by the medical evidence of record." R. 12–15.

based upon the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform jobs that existed in significant number in the national economy and therefore concluded that Plaintiff was not disabled. R. 20–22.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in his favor, or in the alternative, remand this matter to the Social Security Administration for a new administrative hearing, alleging that: 1) the ALJ failed to perform a proper function-by-function assessment of Plaintiff's RFC; and, 2) the ALJ erroneously evaluated Plaintiff's subjective complaints. Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 3–14. For the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** the matter for further clarification.

### A. Plaintiff's RFC

Plaintiff alleges that the ALJ failed to properly assess his RFC. Pl.'s Mem. 3. Specifically, Plaintiff argues that the ALJ did not properly consider his obesity and illiteracy impairments and failed include any limitations related to his cervical degenerative disc disease. *Id.* at 5–11.

When assessing a claimant's RFC, an ALJ is required to consider all "physical and mental impairments, severe and otherwise, and determine, on a function-by function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (modifications original) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). In conducting this assessment, an ALJ must "provide a logical explanation of how she weighed the record evidence and arrived at her RFC findings." *Id.* Only after an ALJ has provided "a narrative discussion describing how the evidence supports each conclusion" can she make a determination of Plaintiff's RFC. *Id.* A complete RFC analysis consists of evidence, logical

explanation, and conclusion, with each element comprising equal importance. *Id.* at 312. Fourth Circuit precedent makes it clear that "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.*; *see also Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) (" Because we are left to guess about how the ALJ arrived at his conclusions on [the plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."). Therefore, an ALJ whose RFC assessment lacks sufficient reasoning or explanation connecting the evidence in the record to the conclusion of a claimant's limitations has made a legal error. *Thomas*, 916 F.3d at 309.

      a. Obesity

Plaintiff alleges the ALJ failed to properly evaluate his obesity in accordance with Social Security Ruling 02-1p. Pl.'s Mem. 5. Specifically, Plaintiff argues that the ALJ failed to consider his obesity in conjunction with his other impairments when assessing his RFC at steps three and four of the sequential evaluation process. *Id.* Commissioner asserts that Plaintiff's obesity was properly considered. Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Comm'r's Mem.") 6.

As Social Security Ruling ("SSR") 02-1p explains, obesity exists when an adult, male or female, has a Body Mass Index ("BMI") of 30.0 or above. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). The ruling further elaborates that an individual with a BMI greater than or equal to 40.0 is considered to have "extreme" obesity, and the greatest risk for developing obesity-related impairments. *Id.* At steps two through five of the sequential evaluation process, an ALJ is required to fully evaluate the effect a claimant's obesity has, both alone and in conjunction with other impairments, on his ability to perform work related activities. *Id.* at *3–7.

At step two, an ALJ must determine whether a claimant is obese, and if that obesity

7

rises to the level of a severe impairment. *Id.* at *4. To make this determination, an ALJ generally relies on the assessment of a claimant's physician and other relevant information from the record in determining whether obesity exists as an impairment. *Id.* at *3. Obesity is considered "a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. Obesity is found to be "'not severe' only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities." *Id.*

At step three, an ALJ must evaluate whether a claimant with obesity meets or equals the requirements of a listing under the Listings of Impairments in 20 C.F.R., subpart P, appendix 1 (the "Listings"). *Id.* at *5. There is no Listing specifically for obesity, however, "an individual with obesity 'meets' the requirements of a [L]isting if he has another impairment that by itself, [or in combination with obesity,] meets the requirements of a [L]isting." *Id.* It is possible for an individual to be deemed disabled based on obesity alone if the obesity impairment is found to be severe and medically equals a Listing at step three. *Id.* at *4. Additionally, an ALJ must consider whether a Listing is met if the individual has multiple impairments, including obesity, that do not individually meet the requirements, but the combination of which is equivalent in severity to a listed impairment. *Id*. at *5.

Before proceeding to step four, an ALJ must evaluate all of a claimant's severe and non-severe impairments to determine his RFC. SSR 96-8p, 1996 WL 374184, at *5. Since obesity can impose limitations on a claimant's functional abilities, an ALJ is required to assess and explain the ways in which an obesity impairment hinders a claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing

8

basis." *Id.* Additionally, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* An ALJ is required to explain how she reached her conclusion "on whether obesity caused any physical or mental limitations." *Boston v. Barnhart,* 332 F. Supp. 2d 879, 886 (D. Md. 2004) (finding reversible error when an ALJ fails to mention a plaintiff's obesity at all in the determination of his RFC).

An ALJ relies on a claimant's RFC to determine whether his impairments prevent him from performing his past relevant work, or any other work that exists within the national economy, at steps four and five. SSR 02-1p, 2002 WL 34686281, at *3. Accordingly, any error in the sequential evaluation must be assessed to determine what, if any, effect it had on the overall outcome of the claim. *See Fountain v. Astrue*, Civ. A. No. CBD-11-1884, 2013 WL 145873, at *4 (Md. D. Jan. 11, 2013) ("Therefore, the court must determine whether the ALJ sufficiently considered the allegedly severe impairment, or whether an erroneous conclusion 'infected' the other steps."). In certain cases, an ALJ's failure to consider a claimant's obesity more thoroughly can be cured by the ALJ's reliance on an opinion by a medical expert. *See, e.g.*, *Hynson v. Astrue*, Civ. A. No. TMD 10-175M, 2011 WL 2175035, at *4 (D. Md. June 2, 2011) ("Although it would have been helpful for the ALJ to include a more detailed discussion regarding Claimant's obesity, the Court finds that any error was harmless as his adoption of virtually all of [the consultative examiner's] limitations demonstrates sufficient consideration.").

In this case, the record contains evidence of Plaintiff's obesity, which ranged from a low BMI of 40.72 to a high BMI of 51.99. R. 456, 470. According to SSR 02-1p, this BMI would fall into the category of "extreme" obesity. SSR 02-1p, 2002 WL 34686281, at *2. Despite this, the ALJ only explicitly discussed Plaintiff's obesity in step two of her decision.

9

The ALJ began by acknowledging Plaintiff's obesity and stated that SSR 02-1p "requires consideration of the combined effects of [Plaintiff's] obesity with his other impairments." R. 14. The ALJ went on to state that she "considered any additional and cumulative effects of [Plaintiff's] obesity on his other body systems" and concluded "that [Plaintiff's] obesity does not cause more than a slight limitation in [Plaintiff's] ability to function." *Id.* This cursory analysis contains an insufficient explanation for how the ALJ came to her determination regarding Plaintiff's obesity. *Cf. Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (modifications original) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)) (holding that "meaningful review [of a RFC] is frustrated when an ALJ goes straight from listing evidence to stating a conclusion"). Without providing the Court with additional details surrounding the reasoning behind her determination, the Court is left to extrapolate on its own the ALJ's meaning from the evidence available, a practice that would require the impermissible reweighing of the evidence. *See Hays,* 907 F.2d at 1456. Further, the ALJ makes no reference to or assessment of Plaintiff's obesity as an impairment on its own. R. 14. This oversight, in itself, is an error, as SSR 02-1p requires the ALJ to evaluate obesity as a severe impairment at step two "when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p at *4.

As previously stated, an error in assessing Plaintiff's obesity at step two could be cured by a more in-depth discussion of Plaintiff's obesity later in the sequential evaluation process or by relying upon an expert's opinion that examines Plaintiff's obesity. *See Cuba v. Comm'r, Soc. Sec.*, Civ. No. JKB-17-2943, 2018 WL 4353480, at *2 (D. Md. Sept. 12, 2018), report and recommendation adopted, No. Civ. JKB-17-2943, 2018 WL 6344199 (D. Md. Oct. 1, 2018)

(finding that while "the ALJ's discussion of [the claimant's] obesity during the [L]isting analysis was limited, the ALJ later cited to medical records and thoroughly evaluated the effects of obesity on [the plaintiff's] RFC elsewhere in the decision"); *see also Hynson*, 2011 WL 2175035, at *4. In *Hynson*, the court found that the ALJ may have failed to discuss the claimant's obesity directly, but noted that the ALJ adopted "virtually all" of the limitations in a consultative examiner's opinion. *Hynson*, 2011 WL 2175035, at *4. The court reasoned that the consultative examiner had "specifically noted that [the plaintiff] suffered from obesity and that this condition affected [the plaintiff's] ability to perform exertional limitations." *Id.* In light of that, the court determined any error on the part of the ALJ was rendered "harmless." *Id.*

In this case, the ALJ made no explicit reference to Plaintiff's obesity in steps three through five of the evaluation.[3] *See* R. 15–22. Rather, the ALJ simply stated at step three that she "considered all of [Plaintiff's] impairments individually, and in combination but [could] find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." R. 15. The ALJ then proceeded to assess Plaintiff's impairments in comparison with Listings 1.04 and 4.02 but made no mention of Plaintiff's obesity in either evaluation. R. 15–16. The Court finds the ALJ's general assertion that she considered "all" the evidence without explicitly addressing Plaintiff's obesity insufficient to meet the required consideration of Plaintiff's obesity impairment. *See Stemple v. Astrue*, 475 F. Supp. 2d 527, 540 (D. Md. 2007) ("Other courts in this district have been "unwilling to declare that a plaintiff's obesity was sufficiently taken into consideration simply because the ALJ made routine reference to having considered the entirety of the record.").

---

[3] An ALJ is required to consider any additional and cumulative effects of obesity when determining whether a claimant has a Listing-level impairment or combination of impairments, and when assessing a claimant's RFC. 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.00(Q) (2018).

11

As noted by Commissioner, the ALJ afforded "great weight" to the opinion of the State agency medical consultant, L. Zuniga, M.D. R. 19. Dr. Zuniga's opinion found Plaintiff's obesity to be a "severe impairment" and accounted for this impairment in the RFC assessment. R. 76–79. While the ALJ disagreed with the determination that Plaintiff's obesity was a "severe impairment," Commissioner asserts that the ALJ included the same limitations outlined in Dr. Zuniga's opinion. Comm'r Mem. 6. Accordingly, Commissioner asserts that any error in her evaluation was rendered harmless. As stated, "[c]ourts have determined that such 'indirect' consideration of obesity, by crediting the report of a [medical expert] who expressly considered a claimant's obesity, is sufficient." *Hoeffler v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-11-2332, 2013 WL 2470084, at *1 (D. Md. June 6, 2013); *see also Hynson*, 2011 WL 2175035, at *4. However, unlike the situation in *Hynson*, the ALJ in this case only adopted part of Dr. Zuniga's RFC and offered no explanation for whether this was due to Plaintiff's obesity or not. R. 19–20. There is no way to determine whether the included limitations sufficiently accommodated for Plaintiff's obesity absent additional explanation from either the ALJ or Dr. Zuniga's opinion. The Court finds the ALJ's partial reliance on Dr. Zuniga's opinion is insufficient to cure the ALJ's error in assessing Plaintiff's obesity. Therefore, the Court finds that the ALJ did not properly consider Plaintiff's obesity, and remand is warranted on this issue.

    b. <u>Literacy</u>

Plaintiff argues that the ALJ erroneously determined his literacy problems caused no more than minimal vocationally relevant limitations in his ability to perform light work. Pl.'s Mem. 10. Plaintiff relies on evidence in the record, including a reading evaluation from the Washington Literacy Center ("WLC") and his own hearing testimony, to support his assertion that he is functionally illiterate. *Id.* Commissioner counters that the ALJ did note Plaintiff's

alleged illiteracy in her decision and acknowledged the existence of the WLC reading evaluation. Comm'r's Mem. 8. Commissioner further asserts that the ALJ questioned Plaintiff extensively about his illiteracy during the hearing. *Id.*

According to Social Security Administration ("SSA") guidelines, "illiteracy means the inability to read or write." 20 C.F.R. § 404.1564(b)(1) (1991). An individual is considered to be illiterate if they "cannot read or write a simple message such as instructions or inventory lists, even though the person can sign his or her name." *Id.* An illiterate person generally "has had little to no formal schooling," however, the guidance provided to ALJs states that a plaintiff's formal numeric grade level of completion may not be an accurate representation of his reading and writing abilities, especially if that formal education was completed several years before the impairment began. 20 C.F.R. § 404.1564(b). When assessing a claimant's educational abilities, the ALJ may rely solely on a claimant's formal numerical grade level "only if there is no other evidence to contradict it." *Id.*; *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987).

Determining a claimant's literacy is essential to step five of the sequential evaluation process because "it dictates which Rule Grid [she] will apply as a basis for deciding whether a claimant is disabled." *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 805 (E.D.N.C. 2009). When an individual limited to light work is closely approaching advanced age, no longer able to perform relevant past work, has a history of unskilled work experience, and is further limited by illiteracy, "a finding of disabled is warranted." 20 C.F.R. § pt. 404, subpt. P, app. 2, 202.00(d), tbl.2, r. 202.09 (2008). At step five, it is the responsibility of the ALJ to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that a claimant can do, given [his RFC] and vocational factors." 20 C.F.R. § 404.1560(c)(2) (2012). If

13

the ALJ is unable to meet this burden, she must find a claimant disabled. *Barkley v. Sullivan*, No. S-91-1386, 1992 WL 121625, at *8 (D. Md. Jan. 31, 1992).

In this case, Plaintiff's educational ability is discussed throughout the record. In his initial application for DIB and his hearing testimony, Plaintiff consistently stated that he was functionally illiterate, and denied having the ability to read or write. R. 53, 62, 230. Plaintiff testified during the hearing that he was unable to understand the instructions on a can of soup or read street signs, and "the best [he] could spell would be [his] name." R. 53. Additionally, included in the record was a reading evaluation conducted by the WLC. R. 286–317. Plaintiff states this evaluation placed his reading ability in the first percentile, with an age equivalent of less than 6.1 years old. Pl.'s Mem. 10.

While the ALJ noted the existence of the WLC evaluation in her decision, she neither discussed the results nor explained how those results might impact an overall finding of illiteracy. R. 21. The burden at step five lies with the ALJ to prove that Plaintiff's literacy falls within a definition provided by SSA guidelines, therefore it is the ALJ's responsibility to evaluate and explain conflicting evidence in furtherance of her disability determination. *Barkley*, 1992 WL 121625, at *8. In fact, the Fourth Circuit has gone so far as to order "outright reversal and an award of benefits" to a plaintiff in a situation where the ALJ disregarded overwhelming substantial evidence contradicting his determination of a plaintiff's literacy. *Id*. at *5. Further, the ALJ's failure to properly explain her determination of Plaintiff's literacy is not harmless as a finding of illiteracy would have directly impacted the outcome of Plaintiff's disability claim. *Barkley,* 1992 WL 121625, at *8.

In addition to the evidence provided by Plaintiff, the ALJ stated that she considered the recommendations of a VE in determining that Plaintiff was not disabled. R. 21. In order "for a

VE's opinion to be relevant or helpful to an ALJ, it must be based in response to proper hypothetical questions which fairly set out all of the [claimant's] impairments." *Marsh v. Astrue*, No. Civ. JKS 08-1962, 2009 WL 2913422, at *4 (D. Md. Sept. 3, 2009) (citing *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989)). Through a series of hypotheticals presented by the ALJ, the VE in this case testified that an individual of Plaintiff's age, work experience, and RFC who was also functionally illiterate was not able to perform any job available in the national economy. R. 60. This information coincides with the conclusions illustrated in the Medical-Vocational guidelines provided by the SSA, which states that when an illiterate individual who is closely approaching advance age (50–54), has a history of unskilled work experience and a RFC limited to light work, "a finding of disability is warranted." 20 C.F.R. § pt. 404, subpt. P, app. 2, 202.00(d). At the time of the alleged disability onset date, Plaintiff was 50 years old, had been performing unskilled labor as a "kitchen helper" for 28 years, and was found to have a RFC limited to light work. R. 20–21. Accordingly, the Court finds the ALJ's explanation inadequate to support her assertion that Plaintiff is not illiterate, and, as this error was not harmless, remand is warranted on this matter.

    c. <u>Cervical Degenerative Disc Disease</u>

  Plaintiff alleges that the ALJ failed to include any limitations in his RFC assessment for his cervical degenerative disc disease, which the ALJ determined to be a severe spinal impairment. Pl.'s Mem. 11. In his motion, Plaintiff refers specifically to the results of an MRI conducted on July 28, 2015, which revealed spinal cord distortion at C3-4, C4-5, and C5-6. *Id.* Commissioner counters that the ALJ discussed Plaintiff's alleged limitations as a result of his degenerative disc disease throughout her decision and that Plaintiff failed to provide evidence that his limitations were more severe than reflected. Comm'r's Mem. 9.

15

While evidence in the record may indicate the presence of severe impairments, it is the responsibility of the ALJ to assess those impairments according to the evidence available. 42 U.S.C. § 405(b)(1) (2019). As previously stated, when assessing a claimant's RFC the ALJ must consider all his medically determinable impairments, including those that are found to be not severe. 20 C.F.R. § 404.1545(a)(2) (2012). If the ALJ makes a determination that is supported by substantial evidence from the record, the Court must accept the ALJ's decision if the correct law has been applied. *Hays,* 907 F.2d at 1456. It is not the role of the Court to reweigh evidence nor substitute its judgment in place of the ALJ's decision, so long as that decision is supported by substantial evidence. *Id.*

In this case, the ALJ's determination that Plaintiff's cervical spine impairments do not prevent his ability to perform limited light work activity is supported by substantial evidence. In her discussion, the ALJ noted that examinations of Plaintiff's orthopedic impairments show "kyphosis[4] of the spine, normal shoulders, some limited cervical range of motion, full strength in the bilateral upper extremities . . . , normal sensation in the bilateral upper extremity, and normal gait," none of which reveal significant physical limitations. R. 19. The ALJ also gave great weight to Plaintiff's State agency medical consultant, Dr. Zuniga, who opined that Plaintiff could perform a range of light work despite his mild cervical spine impairments. R. 19–20. Therefore, the ALJ did not fail to include limitations due to Plaintiff's cervical degenerative disc disease because she determined that Plaintiff's orthopedic impairments did not prevent Plaintiff from

---

[4] "A forward (flexion) curvature of the spine; the thoracic spine normally has a mild kyphosis; excessive forward curvature of the thoracis spine may indicate a pathologic condition." Stedman's Medical Dictionary, available on Westlaw at STEDMANS 473880 (updated Nov. 2014).

performing light work is supported by substantial evidence. Accordingly, remand is not warranted on this issue.

### B. *Plaintiff's Subjective Complaints.*

Plaintiff alleges that the ALJ failed to properly assess Plaintiff's subjective complaints by applying an improper standard when evaluating his credibility. Pl.'s Mem. 11. Specifically, Plaintiff asserts that the ALJ improperly rejected his subjective complaints based solely on the fact that they were inconsistent with objective evidence in the record. *Id.* at 13. In opposition to this assertion, Commissioner argues that the ALJ considered all relevant factors relating to Plaintiff's subjective complaints, and notes that a subjective complaint "need not be accepted to the extent that it is inconsistent with the available evidence, including objective evidence of the underlying impairment." Comm'r's Mem. 10 (citing 20 C.F.R. § 404.1529(c)(4)). Commissioner further explains that the ALJ appropriately analyzed Plaintiff's own statements, daily activities, medical source statements, and treatment records when reaching her conclusion regarding Plaintiff's disability. *Id.* at 11.

Pursuant to SSA guidelines, the ALJ is required to follow a two-step process when evaluating an individual's subjective complaints. 20 C.F.R. § 404.1529 (2017). In the first step, the ALJ must determine whether objective medical evidence exists to show that an individual has a medical impairment that could reasonably produce the alleged symptoms. 20 C.F.R. § 404.1529(b). In the second step, the ALJ must determine the extent to which the individual's symptoms affect his ability to work by evaluating the intensity and persistence of those symptoms. 20 C.F.R. § 404.1529(c)(1). The second step requires the ALJ to consider all objective medical evidence "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2). The ALJ is also required to

consider at step two any submitted information, including medical and nonmedical sources, related to the assertion of pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Since the severity of some symptoms cannot always be observed exclusively by objective medical evidence, the ALJ is not permitted to reject statements regarding the intensity and persistence of pain or other symptoms solely because they are not substantiated by the objective medical evidence. 20 C.F.R. § 416.929(c)(2); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, while there must be objective medical evidence to support the existence of a condition that could reasonably produce a symptom, there need not be objective evidence showing that symptom itself or its intensity. *Hines*, 453 F.3d at 564. Upon reaching a conclusion, the ALJ must explain, beyond "vague (and circular) boilerplate statement[s]," which subjective evidence she found to be credible and that which she decided was not a factor in the individual's disability determination. *Mascio*, 780 F.3d at 640.

In this case, the ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms; . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence on the record." R. 17. The ALJ then described at length Plaintiff's medical history dealing with congestive heart failure, hypertension, cardiomyopathy, and cervical degenerative disc disease, all of which she found to be severe impairments. R. 18–19. The ALJ briefly acknowledged Plaintiff's symptoms of shortness of breath, chest pains, and migraine headaches, and described how Plaintiff alleged that these symptoms affected his ability to care for himself. R. 17. However, nowhere in her assessment does the ALJ explain which of Plaintiff's subjective statements she found to be credible, nor the reasoning she applied in making that determination. The ALJ's use of a vague,

boilerplate statement is not sufficient to support her assessment of Plaintiff's RFC. *Mascio*, 780 F.3d at 640 (ordering remand based on an ALJ's "lack of explanation" where it only included a "vague (and circular) boilerplate statement that [the ALJ] did not believe any claims of limitations beyond what he found when considering [the plaintiff's RFC]"); 20 C.F.R. § 416.929(a) (directing the ALJ to determine the extent to which alleged functional limitations due to pain or other symptoms can reasonably be accepted as consistent with the objective medical evidence to decide how [a plaintiff's] symptoms affect [his] ability to work).

The ALJ also failed to address in her decision Plaintiff's statements made during the hearing. During his testimony, Plaintiff recounted the difficulties his severe impairments pose on his ability to perform his work-related duties at a job he maintained for 28 years. R. 50–52. The ALJ specifically mentions only one claim in the record that she found undermined Plaintiff's credibility regarding his shortness of breath symptom: the fact that he reported lifting weights often. R. 19, 768. However, absent further explanation, this evidence is insufficient support for the ALJ decision to completely reject all of Plaintiff's subjective complaints. *Lewis v. Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)) (asserting that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations). It is the ALJ's responsibility, and not the Court's, "to 'build an accurate and logical bridge from the evidence to his conclusion' that [a claimant's] testimony was not credible." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (remanding an ALJ's denial of disability and stating "if the ALJ decides to discredit [the plaintiff's] testimony . . . it will be incumbent on him to provide a clearer explanation of his reasons for doing so, such that it will allow meaningful review of his decision"). Due to the ALJ's failure to

provide sufficient explanations for her determination, the Court finds remand appropriate on this issue.

**IV.     Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** this matter for further proceedings in accordance with the instructions articulated in these findings and in this Court's prior rulings.

August 19, 2019                                                                    /s/
                                                                           Charles B. Day
                                                                           United States Magistrate Judge

CBD/clc